IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| VICKI ANN BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | CIV-14-979-HE |
| v. | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
|   Acting Commissioner of Social | ) | |
|   Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(I), 423. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

I. Background

In Plaintiff's application for benefits, she alleged that she became disabled on June 4, 2010, at the age of 49, due to degenerative disk disease and depression. Plaintiff has previous work experience as an office manager, accounts manager, and housekeeper.

1

The medical record reflects that Plaintiff was diagnosed in December 2008 with "3 level significant cervical spinal stenosis" shown on MRI testing. (TR 331). She underwent three epidural steriod injections and reported significant improvement in her symptoms in January 2009. (TR 330). Following a motor vehicle accident in May 2010, Plaintiff sought treatment from Dr. Moore, her family physician, for headaches, and neck, back, right ankle, and knee pain. (TR 353). Dr. Moore prescribed muscle relaxant and pain medications, and Plaintiff reported one week later that she was "60% better overall." (TR 350). However, her back pain returned, and Dr. Moore referred her for MRI testing of her lumbar spine. (TR 346). The MRI test was interpreted as normal, and Dr. Moore referred Plaintiff to Dr. Wright, an orthopedic specialist, for evaluation of her continuing complaint of back pain. (TR 345, 532).

Dr. Wright noted in June 2010 that MRI testing showed only "some mild disc pathology" at one lumbar level "with a probable annular tear." (TR 329). At Dr. Wright's recommendation, Plaintiff underwent conservative treatment measures, including epidural steroid injections and physical therapy, but she reported none of these treatment modalities provided pain relief. Because she continued to report "significant back pain" and had "severe and intolerable complaints" of back pain even while taking narcotic pain medication three times a day and muscle relaxant medication, Dr. Wright recommended a discogram to investigate "whether surgical intervention would be an option." (TR 319).

Dr. Wright noted in August 2010 that the discogram showed "annular tears at three levels of [Plaintiff's] lumbar spine." (TR 318). Although the report indicated Plaintiff had

2

"discordant pain," Dr. Wright noted that "when discussing it further with her, I think her pain response was so severe that she had a communication gap." (TR 318). Dr. Wright also noted that he discussed a three-level spinal fusion with Plaintiff and that he could not "predict the outcome" given the "number of levels involved" in such a procedure. (TR 318). He recommended a medial branch block of the facet joints in Plaintiff's lumbar spine. Plaintiff underwent this procedure, and Plaintiff reported to Dr. Wright in October 2010 that this procedure did not provide her with lasting pain relief. Dr. Wright noted at that time that back surgery would have a "very low chance of success" and was not recommended. (TR 313). Dr. Wright then released Plaintiff from further medical treatment and advised her to return on an as-needed basis. (TR 313).

In October 2010, Dr. Moore noted that Plaintiff was prescribed medication for depression. (TR 335). In February 2011, Plaintiff underwent a consultative psychological evaluation conducted by Dr. Cruse for the agency. (TR 407-410). Plaintiff stated that she had been diagnosed with depression and that she had experienced improvement in her symptoms with anti-depressant medication. (TR 407). Plaintiff stated she had been fired from her previous job in June 2010 for missing work. (TR 407). Dr. Cruse conducted a mental status examination and noted Plaintiff had depression and "[c]ognitive problems includ[ing] immediate memory and orientation." (TR 409).

In February 2011, Plaintiff underwent a consultative physical examination conducted by Dr. Paulson for the agency. (TR 412-418). Plaintiff stated that she had "three disc herniations" and that [h]er pain is often 10/10 and described as a hot rod pain shooting down

3

her bilateral legs. The radiating pain is worse in the right leg than the left. It is constantly at least a 5-6/10 pain and located in the mid to low back." (TR 412).

In an examination, Dr. Paulson noted Plaintiff exhibited normal grip strength and normal lower extremity strength with no sensory deficits and normal heel and toe walking. (TR 413). She had a normal posture and a normal gait. (TR 413). However, she had "moderate to severe decrease in [range of motion] within the lower back." (TR 413). The assessment was low back pain due to motor vehicle accident "with multi level disc herniations" although Dr. Paulson noted he had not reviewed MIR or discogram test results and could not confirm the disc herniations although Plaintiff did exhibit "clinical symptoms consistent with sciatic nerve compression on the right." (TR 414).

In October 2011, Dr. Moore recommended "water aerobics" to treat Plaintiff's "failed back." (TR 536). Dr. Moore referred Plaintiff in November 2011 to Dr. Ahmad for "syncope" symptoms. (TR 542). Dr. Ahmad prescribed medication to treat Plaintiff's hypertension and recommended diet and exercise. (TR 546, 549). Plaintiff continued to see Dr. Moore occasionally for pain management. She reported in May 2012 that she had no anxiety or depression. (TR 601). Her pain and muscle relaxant medications were continued. (TR 601). In June 2012, Plaintiff reported to Dr. Moore that "she's been feeling extremely well. She is to the point now she's been working out in her yard and her pain in her back is improved. She denied any other problems at this time." (TR 599). Dr. Moore noted that he was continuing her medications and that he had encouraged Plaintiff to "continue with her exercise program [and to] work outside and to increase her walking distance." (TR 599-600).

4

In August 2012, Plaintiff reported to Dr. Moore that she was "doing better and able to get up and move better and "able to walk more without having pain as intense in [her] low back." (TR 597). Dr. Moore noted she did not exhibit anxiety or depression or "psychological overlay." (TR 597).

In October 2012, Plaintiff reported to Dr. Moore that she was doing well with her medications and had no complaints. (TR 595). Dr. Moore noted that on examination Plaintiff exhibited normal gait and full range of motion in her cervical, thoracic, and lumbar spines, no neurosensory deficits, no orthopedic changes in her upper or lower extremities, and no indication of anxiety, depression or psychological overlay. (TR 595).

Curiously, in a second office note dated the same day as the previously-described office note, Dr. Moore noted that Plaintiff exhibited "an ataxic gait secondary to lumbar spine disease," with "tenderness [to] palpation of the lumbar spine with paravertebral muscle spasms." (TR 594). There is no explanation for the discrepancies between these two office notes.

In February 2013, Dr. Moore noted that Plaintiff returned to follow-up treatment of her thyroid disease. He noted she exhibited normal gait and full range of motion in her cervical, thoracic, and lumbar spines, no orthopedic changes in her upper or lower extremities, no neurosensory deficits, and appropriate affect. (TR 589).

In December 2012, Dr. Wright completed a medical source statement in which Dr. Wright stated that Plaintiff was diagnosed with lumbar radiculopathy, cervical radiculopathy, annular tear, and cervical stenosis. (TR 570). Dr. Wright opined that Plaintiff could sit or

5

stand/walk for at least six hours in an 8 hour workday, she needed a position that allowed her to change positions at will, she could frequently lift 10 pounds and occasionally lift 20 pounds, she could occasionally perform postural movements such as stooping, squatting, and climbing ladders or stairs, and she would need to walk for 10 minutes every 1½ hours. (TR 570-572). Dr. Wright further opined that Plaintiff was capable of high stress work, her attention and concentration were not affected by her symptoms, and she would likely be absent from work about two days per month as a result of her impairments or treatment. (TR 573).

In April 2013, Dr. Moore completed a medical source statement in which Dr. Moore stated that Plaintiff was diagnosed with cervical radiculopathy, lumbar radiculopathy, cervical stenosis, and annular tear. (TR 583). Dr. Moore opined that Plaintiff could sit for 30 minutes, stand for 15 minutes, and sit or stand/walk for less than 2 hours. (TR 584). She would need three to four unscheduled breaks per day lasting 15 to 20 minutes, and her legs should be elevated 50% of the workday. (TR 585). She could rarely lift less than 10 pounds and never lift more than 10 pounds, rarely or never perform postural movements, her ability to use her hands and arms was limited, her symptoms would interfere with her ability to attend and concentrate 25% or more each day, and she would likely be absent from work more than four days per month as a result of her impairments or treatment. (TR 585-586).

Plaintiff testified at a hearing conducted before Administrative Law Judge McLean ("ALJ") on April 24, 2013. (TR 37-78). The ALJ issued a decision on May 16, 2013, in which the ALJ found that Plaintiff was not disabled within the meaning of the Social Security

6

Act as she was capable of performing her previous work as an office manager and account manager. The Appeals Council declined to review this decision. The ALJ's decision is thus the final decision of the Commissioner. See 20 C.F.R. § 404.981; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. General Legal Standards Guiding Judicial Review

The Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

The Social Security Act authorizes payment of benefits to an individual with disabilities. 42 U.S.C. § 401 *et seq*. A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); accord, 42 U.S.C. § 1382c(a)(3)(A); see 20 C.F.R. § 416.909 (duration requirement). Both the "impairment"

7

and the "inability" must be expected to last not less than twelve months. Barnhart v. Walton, 535 U.S. 212 (2002).

III. Evaluation of Medical Source Statement

Plaintiff contends that the ALJ erred in evaluating Dr. Moore's medical source statement. Generally, a treating physician's opinion is entitled to controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting Social Security Ruling 96-2p, 1996 WL 374188, at *2). "Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence." Pisciotta v. Astrue, 500 F.3d 1074, 1078 (10th Cir. 2007)(internal quotation marks omitted). When an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." Id. at 1077.

"Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, 718 F.3d. 1257, 1265 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300).

Those factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon

8

> which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

Watkins, 350 F.3d. at 1301 (quotation omitted).

Further, "[u]nder the regulations, the agency rulings, and our case law, an ALJ must give good reasons ... for the weight assigned to a treating physician's opinion" that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. at 1300 (quotations omitted).

"[I]f the ALJ rejects the opinion completely, he [or she] must then give specific, legitimate reasons for doing so." Id. at 1301 (quotations omitted). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." McGoffin v. Barnhart, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation and emphasis omitted).

With respect to Dr. Moore's's medical source opinion, the ALJ determined it should be accorded "little weight." (TR 30). The ALJ's decision does not set forth any specific reasons for this determination, and it is impossible to determine which, if any, of the relevant factors were considered by the ALJ in reaching this determination.

Defendant Commissioner attempts to provide a *post hoc* rationalization by pointing out that the ALJ "noted in her decision evidence that contradicted Dr. Moore's opinion."

9

Defendant also points to alleged inconsistencies between Dr. Moore's own treatment records and Dr. Moore's medical opinion. But the ALJ's decision does not include any such reasoning. This is error. See Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007)("[T]his court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.").

The ALJ's decision contains other confusing reasoning in connection with the evaluation of medical opinions in the record. For instance, although Dr. Wright's medical source statement indicates Plaintiff was capable of at least some work activities, the ALJ did not accord Dr. Wright's medical opinion controlling weight. Instead, the ALJ determined that Dr. Wright's medical opinion was entitled to only "moderate" or "some" weight. (TR 29). It is not clear from the decision what this finding actually means. The ALJ pointed to asserted inconsistencies between Dr. Wright's medical opinion and "the medical evidence of record for the period covered." (TR 29). But it is not clear what, if any, portions of the medical opinion were found to be consistent with the medical evidence in the record. Additionally, in an even more confusing instance, the ALJ determined that the medical opinions of state agency medical consultants, Dr. Woodcock and Dr. Wainner, were entitled to only "some limited weight based on consideration of the subsequent medical evidence and the treating opinion of Dr. Wright." (TR 28).[1]

---

[1]The ALJ also points out in her decision that Plaintiff "uses a computer. She has e-mail and Facebook accounts. She also has a cell phone." The significance of these statements is not apparent, and such mundane activities do not provide any support for the ALJ's decision.

10

Considering the ALJ's decision as a whole, the reasoning for the weight given to Dr. Moore's medical source statement is not apparent. Under these circumstances, the undersigned cannot "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." Allen v. Barnhart, 357 F.3d 1140, 1145 (10th Cir. 2004).[2]

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner and REMANDING the case to Respondent Commissioner for further administrative proceedings consistent with the findings herein. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before  September 21st, 2015, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

---

[2]In light of this recommendation, it is not necessary to address Plaintiff's remaining arguments in favor of reversal of the Commissioner's decision. Suffice it to say, however, with respect to Plaintiff's remaining claim of error in the ALJ's evaluation of the medical evidence, there is substantial evidence in the record to support the ALJ's determination that her mental impairment was not disabling and did not affect her ability to work. There is scant evidence in the record of a mental impairment, and Plaintiff reported that anti-depressant medication had improved her symptoms. Dr. Cruse did not state that her depression would affect her ability to work.

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this   1st   day of   September  , 2015.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE